IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ORREL EVANS,

                              Plaintiff,                    Civil Action No.
                                                            9:05-CV-1400 (GTS/DEP)

              v.

ALBANY COUNTY CORRECTIONAL FACILITY,
MARY KAY WEIS, Kitchen Supervisor, JAMES
CAMPBELL, Sheriff, T. ROCKWELL, ISU, GLORIA
COOPER, Medical Supervisor,

                              Defendants.

_____

APPEARANCES:                               OF COUNSEL:

FOR PLAINTIFF:

ORREL EVANS, *Pro Se*
Greene Correctional Facility
P.O. Box 975
Coxsackie, NY  12051-0975

FOR DEFENDANT GLORIA COOPER:

THUILLEZ, FORD LAW FIRM               KELLY M. MONROE, ESQ.
20 Corporate Woods Blvd.
Sixth Floor
Albany, NY 12211-1715

FOR REMAINING DEFENDANTS:

ROCHE, CORRIGAN LAW FIRM              ROBERT P. ROCHE, ESQ.
36 South Pearl Street
Albany, NY 12207

DAVID E. PEEBLES,
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Orrel Evans, now a New York prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action

pursuant to 42 U.S.C. § 1983, complaining of civil rights violations

occurring while he was confined at the Albany County Correctional Facility

("ACCF").  Plaintiff's claims in the action stem from the alleged failure of

prison officials at the ACCF to provide him on a regular basis with a

vegetarian diet which, he maintains, was necessitated by both an allergy to

certain foods and his genuinely held religious beliefs.  Plaintiff contends

that this failure infringed upon his right to freely exercise his chosen

religion, as guaranteed by the First Amendment to the United States

Constitution, and additionally exposed him to cruel and unusual

punishment and/or deliberate indifference to a serious medical condition, in

violation of the Eighth Amendment, and the denial of equal protection, as

guaranteed under the Fourteenth Amendment.  As relief, plaintiff's

complaint seeks both injunctive relief and recovery of compensatory and

punitive damages.[1]

Currently pending before the court are two separate motions on behalf of the defendants seeking the entry of summary judgment dismissing plaintiff's claims.  In the first of those motions, defendant Gloria Cooper asserts that plaintiff does not suffer from a sufficiently serious medical condition to trigger the protections of the Eighth Amendment, and that in any event she was not deliberately indifferent to that condition since, as the Health Services Administrator at the facility, she took appropriate steps to insure that Evans received his chosen vegetarian diet.  In their motion, the remaining defendants also have sought the entry of summary judgment, asserting the legal insufficiency of plaintiff's First and Eighth Amendment claims, as a matter of law.  In response to those motions, plaintiff consents to dismissal of his claims against defendant Cooper, but vigorously opposes dismissal with regard to the remaining defendants.

Having carefully considered defendant Cooper's motion, which is unopposed, and having found it to be facially meritorious, I recommend that it be granted.  With respect to the remaining defendants, however, I

---

[1]      As will be seen, plaintiff was transferred out of the ACCF in 2005. Accordingly, he is not entitled to the entry of injunctive relief in the event of a finding of liability. *See Salahuddin v. Goord*, 467 F.3f 263, 272 (2006).

find that while plaintiff's deliberate indifference and equal protection claims are subject to dismissal, there exist genuine triable, material issues of fact which must be resolved in order that plaintiff's First Amendment free exercise claim can be adjudicated, and therefore recommend the remaining portion of defendants' motion be denied.

I.   BACKGROUND[2]

Plaintiff is currently a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services.  *See* Dkt. No. 60.  During the times relevant to his claims in this action, including between June 28, 2005 and October 25, 2005, Evans was confined in the ACCF. Amended Complaint (Dkt. No. 27) ¶¶ 3, 33; *see also* Monroe Aff. (Dkt. No. 53-2) Exh. C.  Upon his entry into the ACCF, plaintiff informed corrections officials at the facility that he was a Rastafarian, and as such observed a vegetarian diet.  Evans Aff. (Dkt. No. 57) ¶ 3.  In response, Evans was advised to inform medical personnel at the facility of this requirement.[3]

---

[2]      In light of the procedural posture of the case the following recitation is drawn from the record now before the court, with all inferences drawn, and ambiguities resolved, in favor of the plaintiff.  *See Wells-Williams v. Kingsboro Psychiatric Ctr.*, No. 03-CV-134, 2007 WL 1011545, at *2 (E.D.N.Y. Mar. 30, 2007) (citations omitted).

[3]      According to the defendants' motion submissions, the medical department at the facility does not become involved in considering requests for special diets based upon inmate religious beliefs.  *See* Cooper Aff. (Dkt. No. 53-6) ¶ 12.

Plaintiff's Local Rule 7.1(a)(3) Statement (Dkt. No. 57) ¶ 3.

Following his arrival at the ACCF, plaintiff was screened by medical personnel, and a medical history was taken.  Cooper Aff. (Dkt. No. 53-6) ¶ 4.  During that screening process plaintiff informed medical officials that he had no allergies, medical or otherwise, and that he required no special diet.  *Id.*  That screening was followed by plaintiff's submission to prison medical officials of a Health Services Request Form ("HSRF"), dated July 3, 2005, and another on July 7, 2005, also failing to reference any request for a special, vegetarian diet.  Monroe Aff. (Dkt. No. 53-2) Exh. C.

On July 8, 2005, plaintiff submitted a third HSRF to medical personnel at the facility, this time advising prison officials of an allergy to meat and eggs and requesting a vegetarian diet.  Monroe Aff. (Dkt. No. 53-2) Exh. C.  On the basis of that request medical officials at the facility wrote an order, dated July 8, 2005, directing that Evans receive a vegetarian diet.  *Id.*

Plaintiff maintains that despite his request and the medical department's authorization for a vegetarian diet, he was denied food which was consistent with his special diet on numerous occasions over the four month period during which he was confined at the ACCF.  *See* Amended

Complaint (Dkt. No. 27) ¶¶ 18-31; Evans Aff. (Dkt. No. 57) ¶ 5.  Plaintiff

further asserts that several complaints were made to officials at the ACCF,

in an effort to secure compliance with the vegetarian diet, all to no avail.

Amended Complaint (Dkt. No. 27) ¶¶ 16-18, 27, 31; Evans Aff. (Dkt. No.

57) ¶¶ 5-6.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on November 9, 2005 and, at the

direction of the court, ultimately filed the amended complaint which is now

the operative pleading before the court on July 13, 2007.  Dkt. Nos. 1, 27.

Named as defendants in plaintiff's amended complaint are James L.

Campbell, the Albany County Sheriff; Thomas Wigger, the ACCF Jail

Administrator; Mary K. Weis, the Kitchen Supervisor at the facility; T.

Rockwell, an employee within the Inmate Service Unit at the ACCF; Gloria

Cooper, the Medical Supervisor at ACCF; Albany County; and the Albany

County Correctional Facility.[4]  *Id.*  Plaintiff's complaint, as amended, sets

forth claims falling into three distinct categories, alleging 1) violation of his

---

[4]     The Albany County Correctional Facility is not an entity separately amenable
to suit.  *Whitley v. Westchester County*, No. 97 CIV. 0420, 1997 WL 659100, at *7
(S.D.N.Y. Oct. 22, 1997).  Since plaintiff has named Albany County, the Albany County
Sheriff, and the Albany County Jail Administrator as defendants, all of whom obviously
have a role in operation and oversight of the facility, I recommend that plaintiff's claims
against the ACCF be dismissed.

First Amendment free religious -exercise rights, based upon the failure to provide him with a vegetarian diet; 2) violation of his right under the Eighth Amendment (two counts) to be free from cruel and unusual punishment; and 3) denial of equal protection, as guaranteed under the Fourteenth Amendment.  Issue was joined by the filing of several answers on behalf of the various defendants, in which they have denied the material allegations of plaintiff's complaint and set forth various affirmative defenses.  *See* Dkt. Nos. 31, 34, 44.

On May 15, 2008, following the close of discovery, defendant Gloria Cooper moved seeking the entry of summary judgment dismissing plaintiff's claims against her as lacking in merit.  Dkt. No. 53.  A motion for summary judgment on behalf of the remaining defendants was subsequently filed on May 16, 2008, similarly asserting the lack of any cognizable constitutional claim against them.  Dkt. No. 54.  Plaintiff has responded by the filing of a combined opposition to both motions on July 24, 2008, Dkt. No. 57, and defendants have since replied to address that opposition.  Dkt. Nos. 58, 59.

Defendants' motions, which are now ripe for determination, have been referred to me for the issuance of a report and recommendation,

pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Summary Judgment Standard

       Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though

8

*pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

A moving party seeking the entry of summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v.*

*Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  The entry of summary

judgment is appropriate only in the event of a finding that no reasonable

trier of fact could rule in favor of the non-moving party.  *See Building*

*Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d

Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.

Ct. at 2511 (summary judgment is appropriate only when "there can be but

one reasonable conclusion as to the verdict").

        B.    Governing Substantive Law Provisions

        Plaintiff's complaint, though somewhat inartfully drafted, appears to

assert that by denying him food consistent with his requested vegetarian

diet, defendants were both deliberately indifferent to his medical needs and

interfered with his right to free exercise of his chosen Rastafarian faith.

        1.    First Amendment

        The First Amendment to the United States Constitution guarantees

the right to free exercise of religion.[5]  U.S. Const. amend. I; *Cutter v.*

*Wilkinson*, 544 U.S. 709, 719, 125 S. Ct. 2113, 2020 (2005).  As is true

with regard to the First Amendment generally, the free exercise clause

_____

        [5]    That amendment provides, in pertinent part, that "Congress shall make no
law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S.
Const. amend. I.

applies to prison inmates, subject to appropriate limiting factors.  *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) ("Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause.") (citing *Pell v. Procunier,* 417 U.S. 817, 822, 94 S. Ct. 2800, 2804 (1974)).  Thus, for example, under accepted free exercise jurisprudence inmates are guaranteed the right to participate in congregate religious services under most circumstances.  *See*, *e.g.*, *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993) (citing cases).  The right of prison inmates to exercise their religious beliefs, however, is not absolute or unbridled, but is instead subject to valid penological concerns, including those relating to institutional security.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S. Ct. 2400, 2404 (1987); *Salahuddin*, 993 F.2d at 308.

Undeniably, the reach of the First Amendment's free exercise clause extends beyond mere attendance at congregate religious services into other aspects of prison life including, pertinently, that of an inmate's diet and participation in religious meals.  *McEachin v. McGuinnis,* 357 F.3d 197, 204-05 (2d Cir. 2004); *Ford,* 352 F.3d at 597.  Ordinarily, the Eighth Amendment establishes as a constitutional minimum the requirement that

11

inmates be provided with nutritionally adequate meals; provided this threshold is met, prison officials otherwise retain considerable discretion in determining dietary constituents. *Word v. Croce,* 169 F. Supp. 2d 219, 226 (S.D.N.Y. 2001). This requirement, however, is augmented by the First Amendment's free exercise clause, which is broad enough to include an inmate's "clearly established" right "to a diet consistent with his or her religious scruples." *Ford*, 352 F.3d at 597; *see also Bass v. Coughlin*, 976 F.2d 98, 99 (2d Cir. 1992). "Courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." *McEachin,* 357 F.3d at 203. A free exercise claim arising from such a denial brings into focus the tension between the right of prison inmates to freely enjoy and exercise their religious beliefs on the one hand, and the necessity of prison officials to further legitimate penological interests on the other. *See Benjamin,* 905 F. 2d at 574.

Examination of plaintiff's free exercise claim entails application of a three-part, burden shifting framework. *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988). A party asserting a free exercise claim bears the initial burden of establishing that the disputed conduct infringes his or her

12

sincerely held religious beliefs.[6]  *Salahuddin v. Goord,* 467 F.3d 263, 274-75 (2d Cir. 2006); *King v. Bennett,* No. 02-CV-349, 2007 WL 1017102, at *4 (W.D.N.Y. Mar. 30, 2007).  Importantly, in evaluating this factor the court must be wary of "question[ing] the centrality of particular beliefs or practices to a faith, or the validity of particular litigant's interpretations of those creeds[,]" *McEachin,* 357 F.3d at 201 (quoting *Hernandez v. Comm'r of Internal Revenue,* 490 U.S. 680, 699, 109 S. Ct. 2136, 2148-49 (1989)), and instead may only consider whether the particular plaintiff holds a belief which is religious in nature.  *Ford,* 352 F.3d at 590; *King,* 2007 WL 1017102, at *4.  Once a plaintiff has made this showing, the burden then shifts to the defendant to identify a legitimate penological purpose justifying the decision under scrutiny.[7]  *Salahuddin*, 467 F.3d at 474-75; *Livingston v.*

_____

[6]     Noting in its decision in *Ford v. McGinnis* a circuit split over whether prisoners must demonstrate that a burden on their religious exercise is substantial in order to establish a free exercise claim, the Second Circuit declined to resolve the issue, instead assuming continued applicability of the substantial burden test.  352 F.3d 582, 592-93 (2d Cir. 2003).  Recent cases from this and other courts suggest that the Second Circuit resolved this split in its decision in *Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006) by subscribing to the substantial burden test.  *See, e.g., Livingston v. Griffin,* No. 9:04-CV-00607, 2007 WL 1500382, at *15 (N.D.N.Y. May 21, 2007) (Singleton, J.); *King v. Bennett,* No. 02-CV-349, 2007 WL1017102, at *4 (W.D.N.Y. Mar. 30, 2007).  While harboring some doubt that the Second Circuit has in fact laid the matter to rest, I find it unnecessary to now take a stance regarding the issue.

[7]     While this framework is particularly well-suited for analysis of an agency wide or facility policy or practice affecting inmates generally, it applies with equal force to individual decisions such as that involved in this case, which impacts only a single inmate.  *Salahuddin,* 467 F. 3d at 274 n.4.

*Griffen*, No. 04-CV-00607, 2007 WL 1500382, at *15 (W.D.N.Y. May 21, 2007). In the event such a penological interest is articulated, its reasonableness is then subject to analysis under the test set out by the Supreme Court in *Turner v. Safley,* 482 U.S. 78, 107 S. Ct. 2254 (1987). *See Giano v. Senkowski,* 54 F.3d 1050, 1054 (2d Cir. 1995); *Livingston,* 2007 WL 1500382, at *15.

Under *Turner,* the court must determine "whether the governmental objective underlying the regulations at issue is legitimate and neutral, and [whether] the regulations are rationally related to that objective." *Thornburgh v. Abbott*, 490 U.S. 401, 414, 109 S. Ct. 1874, 1882 (1989). The court then asks whether the inmate is afforded adequate alternative means for exercising the right in question. *Id.* at 417, 109 S. Ct. at 1884. Lastly, the court must examine "the impact that accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison." *Id.* at 418, 109 S. Ct. 1884. Decisions rendered since *Turner* have clarified that when applying this test, a court should examine "the existence of alternative means of facilitating exercise of the right that have only a *de minimis* adverse effect on valid penological interests." *Smith v. Nuttal,* No. 04-CV-0200, 2007 WL837111, at *5 (W.D.N.Y. Mar. 14, 2007)

14

(citing *Salahuddin,* 467 F. 3d at 274).

### 2.   Eighth Amendment

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S. Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle*).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement – the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference".  *See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546

(N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S.

Ct. 2321 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at

*2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.); *see also, generally,*

*Wilson*, 501 U.S. 294, 111 S. Ct. 2321.  Deliberate indifference exists if an

official "knows of and disregards an excessive risk to inmate health or

safety; the official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must

also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1978;

*Leach*, 103 F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at

*2 (same).  The Eighth Amendment's protections embrace all aspects of

prison life, including the provision of meals, requiring prison officials to

provide inmates nutritionally adequate food.  *Word v. Kroche*, 169 F.

Supp.2d 219, 226 (S.D.N.Y. 2001) (*citing French v. Owens,* 777 F.2d

1250, 1255 (7th Cir. 1985).

### 3.   Fourteenth Amendment

The Equal Protection Clause of the Fourteenth Amendment directs

state actors to treat similarly situated people alike.  *See City of Cleburne,*

*Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254

(1985).  To prove a violation of the Equal Protection Clause, a plaintiff must

16

demonstrate that he or she was treated differently than others similarly

situated as a result of intentional or purposeful discrimination directed at an

identifiable or suspect class.  *See Giano v. Senkowski*, 54 F.3d 1050, 1057

(2d Cir.1995) (citing, *inter alia*, *McCleskey v. Kemp*, 481 U.S. 279, 292,

107 S. Ct. 1756, 1767 (1987)).  The plaintiff must also show that the

disparity in treatment "cannot survive the appropriate level of scrutiny

which, in the prison setting, means that he must demonstrate that his

treatment was not reasonably related to [any] legitimate penological

interests."  *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (quoting

*Shaw v. Murphy*, 532 U.S. 223, 225, 121 S.Ct. 1475 (2001) (internal

quotation marks omitted)).

     C.    <u>Analysis of Defendants' Motions</u>

           1.    <u>Defendant Cooper</u>

In her motion, defendant Cooper challenges the merits of plaintiff's

Eighth Amendment claim against her, questioning his ability to establish

the existence of a serious medical need toward which she exhibited

indifference, noting her efforts to secure a vegetarian diet for him and

prison food service personnel's compliance with that diet.  Defendant

Cooper further observes that to the extent plaintiff's claims are predicated

upon his religious beliefs, according to her, it is not the function of medical personnel to insure that those religious beliefs are met.  Plaintiff appears to accept the arguments raised by defendant Cooper, and has affirmatively indicated his consent to dismissal of all claims against her.  Evans Aff. (Dkt. No. 57) ¶ 7.  Having reviewed defendant Cooper's motion and determined it to be facially sufficient to warrant the relief sought, and in view of plaintiff's consent, I recommend that her motion be granted.

### 2.   Remaining Defendants

Plaintiff's opposition papers make it apparent that he has all but abandoned his claim of entitlement to a vegetarian diet based upon his medical needs, and instead appears to now focus exclusively upon the alleged failure of workers at the ACCF to accommodate his religious beliefs.  Accordingly, I have analyzed defendants' motion from the perspective of whether a reasonable factfinder could conclude that plaintiff's right to a diet consistent with his genuinely held religious beliefs was not met.

In their motion, defendants first question the sincerity of plaintiff's religious beliefs.  While plaintiff asserts that he is a Rastafarian, he also appears to have requested access to Catholic congregate church services.

18

See Roche Aff. (Dkt. No. 54-3) Exh. C1.  Plaintiff counters by noting that this stemmed from the fact that services are not offered for ACCF inmates of the Rastafarian faith, who instead must attend Protestant or Catholic congregate services, both of which espouse the teachings of the Bible, as do Rastafarians.  Plaintiff's Memorandum (Dkt. No. 57-2) ¶ 18.  A determination as to the sincerity of alleged religious beliefs thus appears to present an issue of fact which cannot be resolved in summary judgment, but instead, if material, requires a trial.  *See Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999).

One of the central issues in this case is the extent to which, if at all, plaintiff was in fact denied meals consistent with his religious beliefs.  In his opposition papers, plaintiff has submitted a calendar with the days on which claims to have been deprived of his religious meals circled.  *See* Evans Aff. (Dkt. No. 57) Exh. C-4; *see also* Plaintiff's Memorandum (Dkt. No. 57-2) ¶ 17.  On that calendar, two days in June of 2005, twenty-five in July, twenty-one in August, sixteen in September, and eight in October are circled.  *Id.*  According to the plaintiff, as a result of his food deprivation he lost thirty pounds in weight over the approximately four months of

confinement at the ACCF.[8]  Amended Complaint (Dkt. No. 27) ¶ 33.   In

their reply papers defendants, noting that by plaintiff's account he therefore

missed meals on seventy-two out of one hundred sixteen days of

confinement, assert that this contention on the part of Evans is not

believable given the lack of any medical evidence revealing complaints of

weight loss or hunger.  *See* Defendants' Reply Memorandum (Dkt. No. 59)

at p. 3.

Without question, a reasonable factfinder could conclude that the

denial of food consistent with sincerely held religious beliefs from an

inmate on seventy-two of one hundred sixteen days infringed upon that

inmate's free exercise of his religious beliefs and deprived him of

nutritionally adequate food as guaranteed under the Eighth Amendment.

*See Abascal v. Fleckenstein*, No. 06-CV-349S, 2008 WL 3286353, at *6

(W.D.N.Y. Aug. 7, 2008) (finding that plaintiff's allegation that defendant

deprived him of twelve meals in a two-week period, and seven meals over

a four-day period, was sufficiently serious such that it could constitute a

_____

[8]      According to plaintiff's medical records, at the time of his intake screening at the ACF he weighed one hundred fifty pounds.  *See* Roche Aff. (Dkt. No. 54-3) Exh. C. Unfortunately, plaintiff's medical records do not disclose any weights beyond that date, including at the time of this transfer out of the facility.

violation of the Eighth Amendment).  Because to discount plaintiff's claims in this regard would require the court to make a credibility assessment, an exercise which is inappropriate on motion for summary judgment, I recommend against dismissal of plaintiff's First and Eighth Amendment claims against the remaining defendants at this procedural juncture.

### 3.   Equal Protection

Neither the defendants nor the plaintiff have addressed Evan's equal protection claim in their motion papers.  The court has carefully surveyed the record for any evidence which would support an inference that defendants' alleged failure to provide him with the requisite vegetarian diet was the product of intentional or purposeful discrimination directed at him as a member of an identifiable or suspect class, rather than resulting from negligence or incompetence, but has found none.  Accordingly, I recommend that plaintiff's equal protection claim be dismissed as deficient as a matter of law.[9]

---

[9]      There is potential inherent unfairness to the plaintiff in dismissing a cause of action which does not appear to have been directly challenged in defendants' motion. Because the plaintiff will have an opportunity to lodge objections to this report and recommendation and raise any arguments which, he believes, support his equal protection claim, that potential prejudice is largely ameliorated.  *See Caroll v. Callanan*, No. 9:05-CV-1427, 2007 WL 965435, at *7 n.5 (N.D.N.Y. Mar. 30, 2007) (Kahn, D.J. and Homer, M.J.).

IV.   <u>SUMMARY AND RECOMMENDATION</u>

By all accounts defendant Cooper, the Health Care Administrator at

the ACCF, had no hand in denying plaintiff his requested vegetarian diet,

and in fact not only ordered for him the diet but took measures to follow-up

on complaints by the plaintiff that he was not receiving the required diet.

Under these circumstances, and based upon plaintiff's consent, I

recommend that defendant Cooper's summary judgment motion be

granted and all claims against her dismissed.  With regard to the remaining

defendants, however, genuine issues of material fact exist, including as to

whether plaintiff has sincerely held religious beliefs which mandate that he

observe a vegetarian diet, and whether defendants denied him a

vegetarian diet on a sufficient number of occasions to impinge upon the

free exercise of his religion and deprive him of adequate nutrition, which

must be resolved at trial before plaintiff's First and Eighth Amendment

claims can be adjudicated.  Accordingly, it is hereby respectfully

RECOMMENDED that the motion of defendant Gloria Cooper for the

entry of summary judgment (Dkt. No. 53) be GRANTED, and all claims

against her be DISMISSED; and it is further

RECOMMENDED, that the motion of the remaining defendants

seeking the entry of summary judgment (Dkt. No. 54) be DENIED, with the

exception that plaintiff's denial of equal protection claim and all claims

against the Albany County Correctional Facility should be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court within TEN days of service of this report.

FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

Report and Recommendation upon the parties in accordance with this

court's local rules.


Dated:      January 30, 2009
            Syracuse, NY




_____
David E. Peebles
U.S. Magistrate Judge