UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ORREL EVANS,

                              Plaintiff,

                                                          9:05-CV-1400
v.                                                        (GTS/DEP)

ALBANY COUNTY CORRECTIONAL FACILITY;
MARY KAY WEIS, Kitchen Supervisor; JAMES
CAMPBELL, Sheriff; T. ROCKWELL, ISU;
GLORIA COOPER, Medical Supervisor; and
THOMAS WIGGER, Jail Administrator,

                              Defendants.
_____

APPEARANCES:                                              OF COUNSEL:

ORREL EVANS, 05-A-5372
   Plaintiff, *Pro Se*
Greene Correctional Facility
P.O. Box 975
Coxsackie, NY 12051-0975

THUILLEZ, FORD, GOLD, BUTLER & YOUNG LLP       KELLY M. MONROE, ESQ.
   Counsel for Defendant Gloria Cooper
20 Corporate Woods Blvd., 6th Floor
Albany, NY 12211-1715

ROCHE, CORRIGAN MCCOY & BUSH                   ROBERT P. ROCHE, ESQ.
   Counsel for Remaining Defendants
36 South Pearl Street
Albany, NY 12207

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court in this *pro se* prisoner civil rights action are (1) Defendant

Cooper's motion for summary judgment (Dkt. No. 53), (2) the remaining Defendants' motion to

dismiss for failure to state a claim and/or for summary judgment (Dkt. No. 54), (3) United States

Magistrate Judge David E. Peebles's Report-Recommendation recommending that Defendant

Cooper's motion be granted, and that the remaining Defendants' motion be granted in part and

denied in part (Dkt. No. 66), and (4) Defendants' timely Objections to the Report-

Recommendation (Dkt. No. 67).  For the reasons set forth below, the Report-Recommendation is

adopted in part, Defendants' motions for summary judgment are granted in their entirety, and

Plaintiff's Second Amended Complaint is dismissed in its entirety.

## I.      BACKGROUND

### A.      Relevant Procedural History

On November 9, 2005, Plaintiff filed this action against Albany County Correctional

Facility ("ACCF") and five individuals employed by Albany County.  On July 13, 2007, Plaintiff

amended his Complaint for the second time.  (Dkt. No. 27.)  Generally, in his Second Amended

Complaint, Plaintiff claims that Defendants violated his rights under the First, Eighth and

Fourteenth Amendments by failing to provide him on a regular basis with a vegetarian diet

which, he maintains, was necessitated by both an allergy to certain foods and his genuinely held

religious beliefs.  (*Id*.)  More specifically, Plaintiff alleges that this failure (1) infringed upon his

right to freely exercise his chosen religion, as guaranteed by the First Amendment to the United

States Constitution, (2) exposed him to cruel and unusual punishment and/or deliberate

indifference to a serious medical need, in violation of the Eighth Amendment, and (3) denied

him equal protection under the law, as guaranteed under the Fourteenth Amendment.  (*Id*.)

On October 2, 2007, Defendants filed their Answer to Plaintiff's Second Amended

Complaint.  (Dkt. No. 31.)  On May 15, 2008, Defendant Gloria Cooper filed a motion for

summary judgment pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 53.)  The next day, the remaining

Defendants filed a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and, in the alternative, a motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 54.)

On January 30, 2009, Magistrate Judge Peebles issued a Report-Recommendation recommending that Defendants' motions be granted in part and denied in part. (Dkt. No. 66.) Specifically, Magistrate Judge Peebles recommended that (1) all claims against Defendant Cooper be dismissed, (2) all claims against Defendant ACCF be dismissed, (3) Plaintiff's Fourteenth Amendment claim be dismissed, and (4) a trial be held on Plaintiff's remaining First and Eighth Amendment claims because of the existence of genuine issues of material fact. Familiarity with the grounds of the Report-Recommendation is assumed in this Decision and Order.

On February 12, 2009, Defendants (other than Defendant Cooper) filed their Objections to the Report-Recommendation. (Dkt. No. 67.)

### B.    Undisputed Material Facts

Plaintiff was incarcerated at the ACCF on June 30, 2005. Upon intake, the staff at ACCF performed a medical screening of Plaintiff. During his screening, Plaintiff filled out a medical history and screening form.[1] On the form (which he signed), Plaintiff indicated that he had no allergies, medical or otherwise, and further indicated that he did not require any special diet. On July 3, 2005, Plaintiff submitted a Health Services Request Form to the medical department.[2] This form did not reference any special/vegetarian diet.

---

[1]       (Dkt. No. 54, Part 8, at 5.)

[2]       (*Id*. at 12-13.)

On July 5, 2005, Plaintiff sent a letter to the Inmate Services Unit ("ISU"), in which he indicated–for the first time–that he was a vegetarian.[3]  Generally, there are at least four separate types of vegetarian diets offered at ACCF.[4]  In addition, there are at least three separate "vegetarian style" diets, which either include the use of fish, cheese or eggs.[5]

On July 7, 2005, Plaintiff submitted a second Health Services Request Form, which again made no reference to any special/vegetarian diet.[6]  However, on July 8, 2005, Plaintiff submitted a third Health Services Request Form that did indicate that he was a vegetarian, in addition to being allergic to meat and eggs.[7]  On that same day, the medical department wrote an order for Plaintiff to receive a vegetarian diet.[8]

On July 20, 2005, Plaintiff submitted a letter to Defendant Rockwell at ISU, in which he complained that it took "years" for him to get his food.[9]  On July 29, 2005, Plaintiff submitted a letter to ISU, indicating that he was not receiving the proper meals, even though the medical department had indicated that he was a vegetarian.[10]  On that same day, ISU provided the letter to the kitchen supervisor and to the medical department.  ISU also sent a letter to Plaintiff,

---

[3]         (Dkt. No. 54, Part 7, at 26.)

[4]         (Dkt. No 54, Part 2, at 3-4.)

[5]         (*Id.*)

[6]         (Dkt. No. 54, Part 8, at 14.)

[7]         (*Id.* at 15.)

[8]         (*Id.* [noting that a slip was sent].)

[9]         (Dkt. No. 54, Part 7, at 28.)

[10]        (*Id.* at 30.)

4

informing him that his letter had been sent to the "kitchen and medical supervisor," and that his card on his "tier is marked for a rasafarian [sic] vegitarian [sic] diet."[11]

On July 30, 2005, the medical department prepared a Special Diet Request Form for Plaintiff, which indicated that Plaintiff should receive a vegetarian diet, and should not receive any animal products.[12]  However, according to Plaintiff, on August 5, 2005, he "again did not receive a meal because[,] according to an unknown correctional officer, there was nothing in the kitchen stating Plaintiff was to receive vegetarian meals."[13]  Plaintiff unsuccessfully "tried explaining his situation regarding him not receiving his and having his name removed from the vegetarian diet list to an unknown supervising officer making rounds."[14]

As a result, Plaintiff submitted a Health Services Request Form to the medical department on August 20, 2005.[15]  In this Health Services Request Form, Plaintiff indicated that the "wrong meal" was being sent to him.  The form was reviewed by the medical department on August 22, 2005.  Defendant Cooper noted on the form that, according to the department's records, Plaintiff had already been placed on a vegetarian diet since August 5, 2005.[16]  However, according to Plaintiff, even after submitting a grievance on August 20, 2005, regarding the

---

[11]     (*Id*. at 31.)  The Court notes that Plaintiff has not alleged facts plausibly suggesting, or adduced admissible record evidence establishing, the particular dietary requirements of his Rastafarian religion.

[12]     (Dkt. No. 54, Part 8, at 10.)

[13]     (Dkt. No. 27, ¶ 24 [Plf.'s Second Am. Compl.].)

[14]     (*Id*. at ¶ 25.)

[15]     (Dkt. No. 54, Part 8, at 16.)

[16]     (*Id*.)

receipt of the wrong meals, he "continued to have problems receiving, and quality of his meals."[17]

In early September 2005, Plaintiff submitted a Health Services Request Form complaining of skin irritation on his face and arm.[18]  The form did not mention any allergy, or problems with his vegetarian/special diet.  After receiving the form, the medical department saw Plaintiff and gave him ointment for an acne breakout.

On October 13, 2005, Plaintiff submitted another Health Services Request Form regarding a problem with urinating.[19]  The form made no mention of any allergy, or problems with his vegetarian/special diet.  On October 14, 2005, Plaintiff was seen for this complaint.

According to Plaintiff, "[o]n October 20, 2005, [he] received a 'supposed' vegetarian meal" that was actually "badly burnt eggs and pears."[20]

In addition, attached as an exhibit to his unsworn opposition memorandum of law, Plaintiff has provided the Court with a calendar, in which he has circled 72 days between June 29, 2005, and October 20, 2005, on which he asserts he either (1) "miss[ed]" a meal, or (2) received his meal late.[21]  The Court notes that, apart from not being attached to an affidavit, the

---

[17]     (Dkt. No. 27, ¶ 27 [Plf.'s Second Am. Compl.].)  The Court notes that, in Plaintiff's last letter to Defendant Rockwell dated September 19, 2005, Plaintiff explained that he had to wait "over 30 minutes or more" for a "court sandwich that was so old bread hard and falling apart."  (Dkt. No. 54, Part 7, at 33.)  In the same letter, Plaintiff explained that on another occasion, he "had to wait over 40 minutes [to receive his meal] then they sent over a dirty tray.  I don't no [sic] who the hell they think they are dealing with that way."  (*Id.*)

[18]     (Dkt. No. 54, Part 8, at 17.)

[19]     (*Id.* at 18.)

[20]     (Dkt. No. 27, ¶ 28 [Plf.'s Second Am. Compl.].)

[21]     (Dkt. No. 57, Part 2, at 7, 30.)

calendar fails to specify which days Plaintiff missed a meal, and which days he simply received his meal late.  In addition, the calendar fails to specify whether he missed the meal because (1) he was not given a meal at all, or (2) he was not given the (presumably vegetarian) meal he requested.  Finally, the calendar indicates that Plaintiff did not receive a timely meal at ACCF on June 29, 2005 (though incarcerated there at the time), which appears inaccurate because he was not incarcerated at ACCF until June 30, 2005.

In any event, in their memorandum of law in support of their motion for summary judgment, Defendants concede that Plaintiff did not receive a vegetarian meal on a few occasions.[22]  Furthermore, in their reply papers, Defendants attempt to quantify the extent of this deprivation by indicating that Plaintiff did not receive the proper meal "a half dozen or so times."[23]

As a result of the foregoing treatment, Plaintiff alleges that he lost thirty (30) pounds between June 28, 2005, and October 2005.[24]  Plaintiff also alleges that he suffered from migraine headaches, and dizziness because of his hunger.[25]

## II.    APPLICABLE LEGAL STANDARDS

---

[22]    (Dkt. No. 54, Part 4, at 3.)

[23]    (Dkt. No. 59, at 2.)  The Court notes that, in their Objections, Defendants offer (for the first time) evidence in support of this estimate, although the Court declines to consider this late-blossoming record evidence, pursuant to the legal standard described below in note 26 of this Decision and Order.  (*See*, *e.g.*, Dkt. No. 67, Part 1, ¶ 8 [Roche Affid.]; Dkt. No. 67, Part 5, ¶¶ 8-9 [Clark Affid.]; Dkt. No. 67, Part 8 [Ex. C to Clark Affid.]; Dkt. No. 67, Part 9, ¶ 7, 10, 11, 12 [Weis Affid.].)

[24]    (Dkt. No. 27, ¶ 33 [Plf.'s Second Am. Compl.].)  Plaintiff alleges that the departmental medical staff at Downstate Correctional Facility (where Plaintiff was transferred on October 25, 2005) has a record of his weight, which supports his weight loss claim.  (*Id*.)

[25]    (*Id*. at ¶ 14.)

A.        **Standard of Review on Objection from Report-Recommendation**

When specific objections are made to a magistrate judge's report-recommendation, the

Court makes a "de novo determination of those portions of the report or specified proposed

findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C).[26]

When only general objections are made to a magistrate judge's report-recommendation, the Court

reviews the report-recommendation for clear error or manifest injustice. *See Brown v. Peters*,

95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases],

*aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999).[27]   Similarly, when a party makes no

objection to a portion of a report-recommendation, the Court reviews that portion for clear error

or manifest injustice. *See Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y.

July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed. R. Civ. P. 72(b), Advisory Committee

Notes: 1983 Addition [citations omitted].  After conducing the appropriate review, the Court

may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the

---

[26]        On *de novo* review, "[t]he judge may . . . receive further evidence . . . ." 28
U.S.C. § 636(b)(1)(C).  However, a district court will ordinarily refuse to consider arguments,
case law and/or evidentiary material that could have been, but was not, presented to the
Magistrate Judge in the first instance.  *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132,
1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has
no right to present further testimony when it offers no justification for not offering the testimony
at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am.
World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court
did not abuse its discretion in denying plaintiff's request to present additional testimony where
plaintiff "offered no justification for not offering the testimony at the hearing before the
magistrate").

[27]        *See also Vargas v. Keane*, 93-CV-7852, 1994 WL 693885, at *1 (S.D.N.Y.
Dec.12, 1994) (Mukasey, J.) ("[Petitioner's] general objection [that a] Report . . . [did not]
redress the constitutional violations [experienced by petitioner] . . . is a general plea that the
Report not be adopted . . . [and] cannot be treated as an objection within the meaning of 28
U.S.C. § 636."), *aff'd*, 86 F.3d 1273 (2d Cir.), *cert. denied*, 519 U.S. 895 (1996).

magistrate judge."  28 U.S.C. § 636(b)(1)(C).

**B.**      **Standard Governing Motion to Dismiss for Failure to State a Claim**

After the pleadings are closed, a motion to dismiss for failure to state a claim under Fed.

R. Civ. P. 12(b)(6) is properly brought as a motion for judgment on the pleadings pursuant to

Fed. R. Civ. P. 12(c).  *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983) [citations

omitted]; *see also* Fed. R. Civ. P. 12(b), 12(c).  However, the motion for judgment on the

pleadings is then decided according to the same standard as is a motion to dismiss for failure to

state a claim.  *Id.*

It has long been understood that a defendant may base a motion to dismiss for failure to

state a claim on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading"

under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson*

*v. Onondaga County*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.,

adopting Report-Recommendation on *de novo* review) [citations omitted].

With regard to the first ground, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain "a

short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ.

P. 8(a)(2) [emphasis added].  By requiring this "showing," Fed. R. Civ. P. 8(a)(2) requires that

the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what

the plaintiff's claim is and the grounds upon which it rests."  *Jackson*, 549 F. Supp.2d at 212

n.17 [citations omitted].  The main purpose of this rule is to "facilitate a proper decision on the

merits."  *Id*. at 212 n.18 [citations omitted].[28]

---

[28]      *See also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that
which will enable the adverse party to answer and prepare for trial, allow the application of res
judicata, and identify the nature of the case so it may be assigned the proper form of trial.")

The Supreme Court has long characterized this pleading requirement under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.  *Id*. at 212 n.20 [citations omitted].  However, even this liberal notice pleading standard "has its limits."  *Id*. at 212 n.21 [citations omitted].  As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard.  *Id*. at 213 n.22 [citations omitted].

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Twombly*, 127 S. Ct. at 1968-69.  Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 1965 [citations omitted].  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the

---

[citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

complaint are true. *Id.* [citations omitted].[29]

    As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[30]   It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2).  *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted; emphasis added].  That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim.  *Twombly*, 127 S. Ct. 1965 n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added].  That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever.  Clearly, there must still be enough fact set out (however set

---

[29]     *See also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[The Supreme Court] is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.").

[30]     *See, e.g.*, *Jacobs v. Mostow*, 271 F. App'x 85, 87 (2d Cir. March 27, 2008) (in *pro se* action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Rule 32.1[c][1] of the Local Rules of the Second Circuit); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir. 2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative

level to a plausible level.[31]

Finally, in reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court

must accept the material facts alleged in the complaint as true and construe all reasonable

inferences in the plaintiff's favor.  This standard is applied with even greater force where the

plaintiff alleges civil rights violations and/or where the complaint is submitted *pro se*.  However,

while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the

procedural rules governing the form of pleadings (as the Second Circuit has observed),[32] it does

not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in

Fed. R. Civ. P. 8, 10 and 12.[33]  Rather, as both the Supreme Court and Second Circuit have

---

[31]        For example, in *Erickson*, the Supreme Court held that, because the plaintiff-
prisoner had alleged that, during the relevant time period, he suffered from hepatis C, he had
alleged facts plausibly suggesting that he possessed a sufficiently serious medical need for
purposes of an Eighth Amendment claim of inadequate medical care.  *Erickson*, 127 S. Ct. at
2199-2200.  Expressed differently, the Court held that such a plaintiff need not *also* allege that
he suffered an independent and "substantial injury" as a result of the termination of his hepatis C
medication (a requirement that had been imposed by the district court).  This point of law is
hardly a novel one, which is presumably why the *Erickson* decision was relatively brief.  Prior to
the Supreme Court's decision, numerous decisions, from district courts within the Second Circuit
alone, had found that suffering from hepatitis C constitutes having a serious medical need for
purposes of the Eighth Amendment.  *See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481,
at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11
(S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002);
*McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell
v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).  The important thing
is that, in *Erickson*, even the *pro se* plaintiff was required to allege some sort of fact.

[32]        *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5
(2d Cir. Aug. 12, 2008); *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

[33]        *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (extra liberal pleading
standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from
dismissal for failing to comply with Fed. R. Civ. P. 8); *accord, Shoemaker v. State of Cal.*, 101
F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited

repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural

rules that even *pro se* civil rights plaintiffs must follow.[34]   Stated more plainly, when a plaintiff is

proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."   *Jackson*, 549 F.

Supp.2d at 214 n.28 [citations omitted].

### C.    Standard Governing Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists, the Court

must resolve all ambiguities and draw all reasonable inferences against the moving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In addition, "[the moving party]

bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any

genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However,

---

only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within
the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir. 1995).

[34]        *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993) ("While we have insisted that the
pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we
have never suggested that procedural rules in ordinary civil litigation should be interpreted so as
to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S.
806, 834 n.46 (1975) ("The right of self-representation is not a license . . . not to comply with
relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470
F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with
relevant rules of procedural and substantive law") [citation omitted], *accord*, *Traguth v. Zuck*,
710 F.2d 90, 95 (2d Cir. 1983); *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005)
(acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with
Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice
the adverse party").

when the moving party has met this initial responsibility, the nonmoving party must come forward with "specific facts showing a genuine issue [of material fact] for trial."  Fed. R. Civ. P. 56(e)(2).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party."  *Anderson*, 477 U.S. at 248.  As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]; *see also* Fed. R. Civ. P. 56(e)(2).  As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts." [citations omitted].  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* [citation omitted].

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that nonmoving party is proceeding *pro se*.[35]  (This is because the Court extends special solicitude to

---

[35]      *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) [citations omitted]; *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-

the *pro se* litigant, in part by ensuring that he or she has received notice of the consequences of

failing to properly respond to the motion for summary judgment.)[36]  As has often been

recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a

district court's procedural rules.[37]  For this reason, this Court has often enforced Local Rule

7.1(a)(3) by deeming facts set forth in a moving party's statement to have been admitted where

---

372 (N.D.N.Y. 2003) (Hurd, J.).

[36]     *Krug v. County of Rennselaer*, 04-CV-0640, 2006 WL 2669122, at *3 (N.D.N.Y. Sept. 18, 2006) (McAvoy, J.) ("When dealing with a *pro se* party, certain procedural rules apply so as to insure that the *pro se* litigant is not disadvantaged by the lack of legal training.  In this regard, the Local Rules require that [a *pro se* party be informed of the consequences of failing to respond to a motion for summary judgment, before those consequences may be imposed]."); *see also Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) ("This Court has also held that summary judgment should not be entered by default against a *pro se* plaintiff who has not been given any notice that failure to respond will be deemed a default.") [citations omitted].

[37]     *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *McKaskle v. Wiggins*, 465 U.S. 168, 184 (1984) ("Nor does the Constitution require judges to take over chores for a *pro se* [litigant] that would normally be attended to by trained counsel as a matter of course."); *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980) ("[I]in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law [even when that strict adherence inures to the detriment of a *pro se* litigant]."); *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) ("The right of self-representation is not a license . . .  not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("[P]*ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law.") [citation omitted]; *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995) ("Although *pro se* litigants should be afforded latitude, . . . they generally are required to inform themselves regarding procedural rules and to comply with them . . . .  This is especially true in civil litigation.") [internal quotation marks and citations omitted]; *Edwards v. I.N.S.*, 69 F.3d 5, 8 (2d Cir. 1995) ("[W]hile a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them.") [citations omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("[T]he right [to benefit from reasonable allowances as a *pro se* litigant] does not exempt [the *pro se*] party from compliance with relevant rules of procedural and substantive law.") [internal quotation marks and citations omitted].

the nonmoving party has failed to properly respond to that statement[38]–even where the

nonmoving party was proceeding *pro se* in a civil rights case.[39]

## III.   ANALYSIS

### A.   Plaintiff's First Amendment Claim

Plaintiff claims that Defendants violated his rights under the Free Exercise Clause of the

First Amendment by denying him food consistent with his Rastafarian faith.  The First

Amendment guarantees the right to free exercise of religion.  U.S. Const. amend. I; *Cutter v.*

*Wilkinson*, 544 U.S. 709, 719 (2005).  "Prisoners have long been understood to retain some

measure of the constitutional protection afforded by the First Amendment's Free Exercise

Clause."  *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citation omitted).  This protection

---

[38]       Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[39]       *See, e.g.*, *Hassig v. N.Y.S. Dep't of Envtl. Conservation*, 01-CV-0284, Decision and Order, at 7 (N.D.N.Y. filed March 4, 2004) (McAvoy, J.), *aff'd*, No. 04-1773, 2005 WL 290210 (2d Cir. Feb. 2, 2005); *Lee*, 2004 U.S. Dist. LEXIS 20746, at *12-13, 15, *aff'd*, No. 04-1921, 2004 U.S. App. LEXIS 21432; *Harvey v. Morabito*, 99-CV-1913, 2003 WL 21402561, at *1, 3-4 (N.D.N.Y. June 17, 2003) (Sharpe, M.J.), *adopted by* 99-CV-1913, Order, at 2-3 (N.D.N.Y. filed Jan. 15, 2004) (Munson, J.), *aff'd*, No. 04-1008, 115 F. App'x 521 (2d Cir. Dec. 23, 2004); *Krug*, 2006 WL 2669122, at *2-3; *Fox*, 2006 U.S. Dist. LEXIS 9147, at *2-3; *Singleton v. Caron*, 03-CV-0455, 2005 WL 2179402, at *3-4 (N.D.N.Y. Sept. 5, 2005) (Peebles, M.J.), *adopted by* 03-CV-0455, 2006 WL 2023000, at *3 (N.D.N.Y. July 18, 2006) (Sharpe, J.); *Govan*, 289 F. Supp.2d at 295; *Butler v. Weissman*, 00-CV-1240, 2002 WL 31309347, at *3 (N.D.N.Y. June 20, 2002) (Sharpe, M.J.), *adopted by* 00-CV-1240, Decision and Order, at 1-2 (N.D.N.Y. filed July 22, 2002) (Kahn, J.); *DeMar v. Car-Freshner Corp.*, 49 F. Supp.2d 84, 86 & n.1 (N.D.N.Y. 1999) (McAvoy, C.J.); *Costello v. Norton*, 96-CV-1634, 1998 WL 743710, at *1 n.2 (N.D.N.Y. Oct. 21, 1998) (McAvoy, C.J.); *Squair v. O'Brien & Gere Eng'rs, Inc.*, 96-CV-1812, 1998 WL 566773, at *1 n.2 (N.D.N.Y. Aug. 21, 1998) (Scullin, J.); *see also Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing, in *pro se* civil rights case, district courts' discretion to adopt local rules like 7.1[a][3] "to carry out the conduct of its business").

extends "into . . . aspects of prison life including, pertinently, that of an inmate's diet . . . ." *Ward v. Goord*, 06-CV-1429, 2009 WL 102928, at \*9 (N.D.N.Y. Jan. 13, 2009) (Hurd, J.) (citation omitted).  "The Second Circuit has held that it is clearly established that a prisoner has a right to a diet consistent with his or her religious scruples." *Ward*, 2009 WL 102928, at \*9 (citation omitted).  Therefore, "Courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." *Johnson v. Guiffere*, 04-CV-0057, 2007 WL 3046703, at \*4 (N.D.N.Y. Oct. 17, 2007) (Hurd, J.) (internal quotation marks and citation omitted).  "A free exercise claim arising from such a denial brings into focus the tension between the right of prison inmates to freely enjoy and exercise their religious beliefs on the one hand, and the necessity of prison officials to further legitimate penological interests on the other hand." *Guiffere*, 2007 WL 3046703, at \*4 (citation omitted).

"Examination of plaintiff's free exercise claim entails application of a three-part, burden shifting framework." *Id*. at 5 (citation omitted).  "A party asserting a free exercise claim bears the initial burden of establishing that the disputed conduct infringes on his or her sincerely held religious beliefs." *Id*. (citations omitted).  "Importantly, in evaluating this factor the court must be wary of questioning the centrality of particular beliefs or practices to a faith, or a validity of particular litigants' interpretations of those creeds, and instead may only consider whether the particular plaintiff holds a belief which is religious in nature." *Id*. (internal quotation marks and citations omitted).  Stated another way, "[t]he freedom to exercise religious beliefs cannot be made contingent on the objective truth of such beliefs." *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984).  Rather, a subjective test must be employed to determine whether the disputed

conduct infringes on the plaintiff's sincerely held religious beliefs.  *See Ford v. McGinnis*, 352 F.3d 582, 589-90 (2d Cir. 2003).

"Once a plaintiff has made this showing, the burden then shifts to the defendant to identify a legitimate penological purpose justifying the decision under scrutiny."  *Guiffere*, 2007 WL 3046703, at *5 (citations omitted).  "In the event such a penological interest is articulated, its reasonableness is then subject to analysis under the test set out by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987)."  *Id.* (citations omitted).

"Under *Turner*, the court must determine whether the governmental objective underlying the regulations at issue is legitimate and neutral, and whether the regulations are rationally related to that objective."  *Id.* (internal quotation marks and citation omitted).  The court then asks whether the inmate is afforded adequate alternative means for exercising the right in question."  *Id.* (citation omitted).  "Lastly, the court must examine the impact that accommodation of the asserted constitutional right will have on others guards and inmates in the prison."  *Id.* (internal quotation marks and citation omitted).  "Decisions rendered since *Turner* have clarified that[,] when applying this test, a court should examine 'the existence of alternative means of facilitating exercise of the right that have only a *de minimis* adverse effect on valid penological interests.'"  *Id.* (citations omitted).

With all of this in mind, it is important to note that "[t]here may be inconveniences [regarding denials of religiously required food] so trivial that they are most properly ignored." *Tafari v. Annets*, 06-CV-11360, 2008 WL 2413995, at *16 (S.D.N.Y. June 12, 2008) (quoting *McEachm v. McGuinnis*, 357 F.3d 197, 203 n.6 [2d Cir. 2004]).  "In this respect, this area of the law is no different from many others in which the time-honored maxim *de minimis non curat lex*

applies." *McEachm*, 357 F.3d at 203 n.6.

Here, as an initial matter, Plaintiff has not alleged facts plausibly suggesting, or adduced admissible record evidence establishing, that the disputed conduct infringed on his sincerely held religious beliefs.  In particular, Plaintiff has not alleged or established how the meals that he received were actually "wrong."  For example, Plaintiff has not alleged or established that the meals were "wrong" because they were not in conformity with his Rastafarian faith, or because they contained a product to which he is allergic.  Nor has Plaintiff alleged or established how receiving non-vegetarian meals infringed on his sincerely held religious beliefs.  *See Benjamin v. Coughlin*, 905 F.2d 571, 580 (2d Cir. 1990) (dismissing Rastafarians' "dietary claim" asserting they had constitutional right to observe "Ital," because plaintiffs "failed to clearly define the claim or to make the evidentiary showing required to establish any constitutional dietary claim").

In any event, Plaintiff has not alleged facts plausibly suggesting, or adduced admissible record evidence establishing, that the "wrong meals" he (allegedly) received constituted a burden that was anything more than *de minimis* in nature.  As explained above in Part I.B. of this Decision and Order, Plaintiff has not established (or even alleged) the number of "wrong meals" that he (allegedly) received.[40]  As also explained above in Part I.B., in their motion for summary judgment, Defendants concede that Plaintiff was denied vegetarian food during "a few of his meals."  Furthermore, in an effort to quantify the extent of this deprivation, Defendants estimate that Plaintiff received the "wrong meal" about "a half dozen or so times."

---

[40]     As explained above in Part I.B. of this Decision and Order, the closest Plaintiff comes to doing so is when he provides the Court with a calendar, in which he has circled 72 days between June 29, 2005, and October 20, 2005, on which he asserts he either (1) "miss[ed]" a meal, or (2) received his meal late.

For the sake of argument, the Court will assume that the number of "wrong meals" was *three times* the number of "wrong meals" conceded by Defendants, which would be the equivalent of one "wrong meal" per week for each of the 18 weeks that Plaintiff was incarcerated at ACCF. What is as significant as the number of "wrong meals" is the time period over which they occurred. Here, such "wrong meals" were not delivered to Plaintiff consecutively. Rather, Plaintiff asserts they were delivered over the course of Plaintiff's incarceration at ACCF, from June 30, 2005, until October 25, 2005–a time period of approximately 118 days. Given that Plaintiff was supposed to receive three meals per day, Plaintiff was supposed to receive approximately 354 meals while at ACCF. Assuming that Plaintiff received the "wrong meal" approximately 18 out of 354 times, the Court finds that a rational juror could not conclude that the resulting burden on Plaintiff's religious beliefs was anything more than *de minimis*.

In the analogous case of *Odom v. Dixion*, the Western District of New York held that the New York State Department of Correctional Services' failure to provide a prisoner with Kosher meals on seven out of 33 occasions (i.e., over an eleven-day time period) did not "support a § 1983 violation under either the First Amendment or RLUIPA." *Odom v. Dixion*, 04-CV-0889, 2008 WL 466255, at *11 (W.D.N.Y. Feb. 15, 2008) (noting that deprivation was due to "an administrative error based on [the prisoner's] failure to timely advise [the facility's] food service personnel of his brief confinement on keeplock status"). Other courts have issued similar rulings. *See, e.g., Norwood v. Strada*, 249 F. App'x. 269, 272 & n.1 (3d Cir. 2007) (denial of religiously certified "halal" meals on seven out of seven occasions, during prison's two-and-one-half-day emergency lock-down, was "a mere *de minimis* intrusion" that failed to substantially burden the inmate's religious beliefs); *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999)

(affirming summary judgment for defendants because denial of pork-free meal on three

occasions out of 810 meals constituted *de minimis* burden, where the denials were caused by

"institutional shortage," and plaintiff "has not alleged a routine or blanket practice of denying

him pork-free meals."); *Thomas v. Picio*, 04-CV-3174, 2008 WL 820740, at *6 & n.8 (S.D.N.Y.

Mar. 26, 2008) (assuming that inmate plaintiff was denied three or four Kosher meals for one or

two consecutive days, "such a denial is not a substantial burden" on her free exercise of

religion); *Omar v. Casterline*, 414 F. Supp.2d 582, 593 (W.D. La. 2006) ("[T]he refusal to hold

three meals [until sunset] because of Ramadan states only a *de minimis* imposition on . . . free

exercise rights.").[41]

     For each of these alternative reasons, Plaintiff's First Amendment claim is dismissed.

### B.    Plaintiff's Eighth Amendment Claim

     Plaintiff claims that Defendants violated his Eighth Amendment rights in two separate

ways.  First, he claims that, by denying him food consistent with his vegetarian diet, which was

approved by the medical department at ACCF, he was denied the right to adequate prison

conditions.  Second, he claims that, by knowingly being allowed to lose significant weight, he

was denied the right to adequate medical care.  The relevant legal standard governing both

claims is the same.

     "The Eighth Amendment prohibits 'cruel and unusual punishments' in the course of

---

[41]    *Cf. Tafari*, 2008 WL 2413995, at *16 (denial of Kosher meals on a few separate occasions "did not substantially burden [Plaintiff's] religious beliefs and constituted, at most, a *de minimis* violation."); *Ward*, 2009 WL 102928, at *9 ("The failure to provide a single meal is insufficient to allege a constitutional violation."); *Peterson v. Price*, 06-CV-0106, 2007 WL 2893009, at *6 (N.D. W.Va. Sept. 28, 2007) ("[T]he failure to provide inmates with one or two kosher meals does not rise to the level of a constitutional claim.").

incarceration." *Labounty v. Gomez*, 94-CV-3360, 1998 WL 214774, at *2 (S.D.N.Y. May 1, 1998). "To bring a cause of action pursuant to Section 1983 of Title 42, United States Code, for a violation of the Eighth Amendment's prohibition, a plaintiff must establish that the deprivation of which he is complaining is 'sufficiently serious' to constitute cruel and unusual punishment and that a defendant's actions in allowing the deprivation must have amounted to deliberate indifference." *Labounty*, 1998 WL 214774, at *2 (citing *Farmer v. Brennan*, 511 U.S. 825, 114 [1994]). "Thus, there is an objective and subjective component to the test." *Id*. (citing *Rivera v. Senkowski*, 62 F.3d 80, 84 [2d Cir. 1995]).

"The denial of a medically proscribed diet may constitute an Eighth Amendment violation under certain circumstances." *Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 180 (N.D.N.Y. 1996) (citing *Robles v. Coughlin*, 725 F.2d 12, 15-16 [2d Cir. 1983]) (other citations omitted). Likewise, "under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." *Robles*, 725 F.2d at 15-16 [citations omitted]; *see also Chapdelaine v. Keller*, 95-CV-1126, 1998 WL 357350, at *12 (N.D.N.Y Apr. 16, 1998) (Sharpe, M.J.) ("[T]he Eighth Amendment requires that prisoners receive nutritionally adequate food prepared and served in conditions that do not present an immediate danger to the health of the inmates who consume it"). However, "[m]ere negligence or inadvertent failure to provide a medically necessary diet is not a constitutional violation." *Abdush-Shahid*, 933 F. Supp. at 180.

To establish a valid claim that the denial of food (or the denial of a medically proscribed diet) constitutes an Eighth Amendment violation, one must establish that there was a "sufficiently serious condition" that resulted from the food not being received. *See, e.g., Labounty*, 1998 WL 214774, at *2. A condition is serious for constitutional purposes if it

22

presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).[42]

If Plaintiff is able to establish a "sufficiently serious condition," he must also establish "that corrections personnel intentionally denied, delayed access to, or interfered with the [receipt of food]." *Abdush-Shahid*, 933 F. Supp. at 180; *see also Portuondo*, 151 F. Supp.2d at 213. Stated another way, deliberate indifference requires more than "negligent oversight." *Bockelmann*, 2007 WL 527320, at *10. In addition, a showing of deliberate indifference requires more than just "vague and conclusory allegations." *Labounty*, 1998 WL 214774, at *2. Finally, it is worth noting that a plaintiff has "a duty to inform [facility] staff that he was not receiving his medically prescribed diet," and if he "fail[s] to do so[,] . . . [d]eliberate indifference does not exist." *Labounty*, 1998 WL 214774, at *2.

---

[42]    *See also Bost v. Bockelmann*, 04-CV-0246, 2007 WL 527320, at *8 (N.D.N.Y. Feb. 20, 2007) (Sharpe, J.) (concluding that, although Plaintiff allegedly lost fifteen pounds in two days, "there is no evidence in the record from which a reasonable factfinder could conclude that plaintiff's food intake and weight loss concerns represented a condition of urgency or resulted in degeneration or extreme pain sufficient to implicate an Eighth Amendment violation"); *cf. Beckford v. Portuondo*, 151 F. Supp.2d 204, 213 (N.D.N.Y. 2001) (Kahn, J.) (material issue of fact existed with regard to inmate's Eighth Amendment claim because evidence showed that inmate was deprived of two out of three meals per day for eight days); *Moss v. Ward*, 450 F. Supp. 591, 594, 597 (W.D.N.Y. 1978) (material issue of fact existed with regard to inmate's Eighth Amendment claim because evidence showed that inmate was completely deprived of food for four consecutive days, and was given only one meal a day for next three days).

### 1.      Whether Plaintiff's Weight Loss Constitutes a Serious Medical Need

As an initial matter, Plaintiff's claim that he is allergic to meat and eggs is problematic

because the admissible record evidence before the Court fails to establish a diagnosis by any

medical professional that Plaintiff suffers from allergies to meat or eggs.  *See Bockelmann*, 2007

WL 527320, at *8 (noting, as an initial problem to Plaintiff's claim that his medical condition

constitutes a serious medical need, that "the record before the court fails to disclose a diagnosis

by any medical professional that [Plaintiff] suffers from a medical condition requiring the high

calorie diet which he so persistently sought").  The only proof that Plaintiff has offered that

supports his claim that he is allergic to meat and eggs is his statement to medical staff, as well as

the letters he wrote to Defendant Rockwell, indicating that he is allergic to meat and eggs.  (Dkt.

No. 54, Part 7, at 26, 28, 30, 32.)  Apart from the conclusory and self-serving nature of this

"evidence," it should be noted that (1) Plaintiff failed to inform Defendants of this alleged

allergy for roughly a week, despite having multiple opportunities to do so, and (2) he

affirmatively indicated during his screening on June 30, 2005, that he did not suffer from any

allergies.

However, even assuming that Plaintiff is indeed allergic to meat and eggs, and was

entitled to a vegetarian diet for that reason, the only harm that he has alleged as a result of being

deprived vegetarian meals on an unspecified number of occasions is that he lost thirty (30)

pounds over a four-month period, and that this weight loss contributed to him suffering migraine

headaches and dizziness.  There are three problems with this alleged harm.

First, although Plaintiff claims that Downstate Correctional Facility has a record of his

weight, which supports his weight loss claim, Plaintiff has failed to adduce admissible record

evidence establishing this loss of thirty pounds.  Second, the record reflects that, at no point in any of the complaints that Plaintiff filed between July and October 2005, or during any of his visits with medical staff, did Plaintiff indicate that he had lost any weight or was experiencing headaches or dizziness.  Finally, Plaintiff does not adduce admissible record evidence establishing (or even allege facts plausibly suggesting) that he has been unable to gain weight since leaving ACCF, or that the headaches and dizziness have persisted since October 2005.

As a result, even assuming that Plaintiff lost thirty pounds and experienced dizziness and headaches over a four-month period (from June 30, 2005 to October 25, 2005), as the District Judge Gary L. Sharpe of this Court concluded *Bost v. Bockelmann*, the undersigned concludes that "there is no evidence in the record from which a reasonable factfinder could conclude that plaintiff's . . . weight loss concerns represented a condition of urgency or resulted in degeneration or extreme pain sufficient to implicate an Eighth Amendment violation." *Bockelmann*, 2007 WL 527320, at *8.

>     **2.     Whether Defendants Were Deliberately Indifferent to any of
>              Plaintiff's Serious Medical Needs**

Even if the Court were to find a question of fact as to whether Plaintiff's weight loss constituted a sufficiently serious condition, the Court could not find any admissible record evidence establishing that Defendants were deliberately indifferent to this condition.  When viewing the record in the light most favorable to Plaintiff, the Court finds that, during his incarceration at ACCF, Plaintiff (1) wrote four letters to Defendant Rockwell at ISU, (2) complained twice to unidentified corrections officers about his food, and (3) notified the medical staff that he was receiving the "wrong meals" one time in a Health Services Request Form.  *See* Part I.B. of this Decision and Order.

Based on these undisputed facts, the Court finds that there is at least a question of fact as to whether there were certain days on which Plaintiff did not receive vegetarian meals. However, the Court also finds that "[t]here is no evidence in the record . . . to suggest that this deprivation was deliberate and calculated to deprive the plaintiff of the nourishment constitutionally required and necessary to avoid . . . weight loss, as distinct from the result of negligent oversight[,] which does not rise to a level of deliberate indifference." *Bockelmann*, 2007 WL 527320, at *10. "Simply stated, the evidence is lacking that any of the constituent groups sued in this action, including the county defendants, prison medical personnel, and the food service providers at [ACCF], were both cognizant of a serious medical need on the part of the plaintiff and aware that their failure to be faithful in providing the prescribed . . . diet would result in a substantial risk of serious harm." *Bockelmann*, 2007 WL 527320, at *10.

In support of this finding, the Court makes four points. First, of the four letters that Plaintiff wrote to ISU, two focused almost exclusively on the quality of the food he received,[43] and another was the first letter that he sent to ISU, notifying them that he was a vegetarian. (Dkt. No. 54, Part 7, at 26, 28, 33.) The remaining letter, written on July 29, 2005, explained that Plaintiff was a vegetarian and implied that Plaintiff had problems receiving vegetarian meals. (Dkt. No. 54, Part 7, at 30.) However, neither this letter, nor any of the other letters, in any way stated that Plaintiff was losing weight, or suffering from other side-effects as a result of receiving the "wrong meal." (Dkt. No. 54, Part 7, at 26, 28, 30, 32, 33, 35, 38, 40, 42.)

Second, the Court notes that Plaintiff indicated on August 20, 2005, in a Health Services

---

[43]     "The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." *Bockelmann*, 2007 WL 527320, at *10 (citing *LeMaire v. Maass*, 12 F.3d 1444, 1456 [9th Cir. 1993] [other citation omitted]).

Request Form, that "everyday they send up the wrong meal." The record reflects that, after filling out this form, Plaintiff filled out Health Services Request Forms on two separate occasions (once in early September 2005 and once on October 13, 2005). On neither occasion did Plaintiff mention that he was still receiving the "wrong meal." The Court finds this fact material because, if Plaintiff was having a problem with his meals, based on the fact that he had previously notified the medical department in a Health Services Request Form of his problem, it would be reasonable to expect that he would have again voiced this problem to the medical department.

Third, the record reflects that, in all of the visits that Plaintiff had from the medical department throughout his four-month stay at ACCF, never once did he speak of weight loss, or mention other side-effects that he was suffering as a result of receiving the "wrong meal."

Finally, the record reflects that Defendant Rockwell took action to make the kitchen staff and medical staff aware of Plaintiff's issues; the medical staff also took action to so notify the kitchen staff; and the kitchen staff did not intentionally deprive Plaintiff of his vegetarian diet.[44] Simply stated, whatever harm Plaintiff suffered cannot be attributed to anything more than negligence, which, again, is not actionable under the Eighth Amendment.

For all of these reasons, Plaintiff's Eighth Amendment claims are dismissed.

---

[44]      In his memorandum of law in opposition to Defendants' motion for summary judgment, Plaintiff argues that "a screw up or simple negligence or inadvertent failure to provide food or care as requested automatically [gives rise] to a deprivation of constitutional privilege." However, the law is clear that simple negligence does not rise to the level of deliberate indifference. *See Bockelmann*, 2007 WL 527320, at *10. Rather, deliberate indifference is a state of mind akin to criminal recklessness. *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003); *Hathaway v. Coughlin* ("Hathaway II"), 99 F.3d 550, 553 (2d Cir. 1996).

C.      **Plaintiff's Fourteenth Amendment Claim**

Magistrate Judge Peebles recommended that the Court dismiss Plaintiff's Fourteenth

Amendment claim that Defendants' refusal to adhere to the Court Order that he receive a special

vegetarian diet associated with his religious practices violated Plaintiff's right to equal protection

under the law.  Neither party has objected to this recommendation.  As a result, the Court

reviews the recommendation for clear error, and finds no such error.  Accordingly, for the

reasons set forth in Magistrate Judge Peebles's Report-Recommendation, Plaintiff's Fourteenth

Amendment claim is dismissed.

        **ACCORDINGLY**, it is

        **ORDERED** that Magistrate Judge Peebles's Report-Recommendation (Dkt. No. 66) is

**ADOPTED in part**, as described above; and it is further

        **ORDERED** that Defendants' motion for summary judgment (Dkt. Nos. 53, 54) is

**GRANTED** in its entirety; and it is further

        **ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 27) is **DISMISSED**

in its entirety.  The clerk is directed to enter judgment and close this case.

Dated: May 14, 2009
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge